**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Shuntavia D Wigfall, | ) | |
| | ) | No. 19 B 20319 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Carol A. Doyle |

**MEMORANDUM OPINION**

Chapter 13 debtor Shuntavia Wigfall moves to avoid the lien of the City of Chicago on her car. She asserts that it is a judicial lien that can be avoided under § 522(f) of the Bankruptcy Code because it impairs her exemption in the car. The City contends that its lien is not avoidable under § 522(f) because it is a statutory lien, not a judicial lien. The debtor is correct. The City holds a judicial lien that may be avoided under § 522(f). The motion will be granted.

I.    Background

The debtor owns a 2005 Jeep Grand Cherokee that she valued in Schedule B at $2,000. She listed a lender in Schedule D as a creditor secured by a non-purchase money security interest in the car. She also listed the City of Chicago as a creditor owed $13,884 for unpaid parking tickets. The City impounded her car pre-petition and asserts a possessory lien in it. The debtor claimed a $2,400 exemption in the car under 735 ILCS 5/12-1001(c) (West 2019). She moved to avoid the City's lien under § 522(f) of the Bankruptcy Code, 11 U.S.C. § 522(f), because it impairs her exemption.

1

II.     Avoiding a Judicial Lien that Impairs an Exemption

Section 522(f) permits a debtor to avoid a judicial lien that impairs an exemption.  11

U.S.C. § 522(f)(1)(A).  The statute states that the "debtor may avoid the fixing of a lien on an

interest of the debtor in property to the extent that such lien impairs an exemption to which the

debtor would have been entitled under subsection (b) of this section, if such lien is – (A) a

judicial lien . . . ."  11 U.S.C. § 522(f)(1).  To obtain relief under this section, a debtor must

satisfy four requirements:  (1) the debtor must properly assert an exemption in property in which

she has an interest, (2) there must be a lien on the property, (3) the lien must impair the

exemption, and (4) the lien must be a judicial lien.  *See, e.g., In re Rosol*, 114 B.R. 560, 562

(Bankr. N.D. Ill. 1989).

The parties do not dispute that the debtor meets the first three requirements.   First, the

debtor owns the car and properly asserted a $2,400 exemption in it as permitted under §

522(b)(1) and 735 ILCS 5/12-1001(c).  Second, the City asserts a lien on the debtor's car created

under §§ 9-92-080-080(f), 2-14-132(l), and 9-100-120(j) of the Municipal Code of Chicago

("M.C.C.") .  These sections provide that a vehicle impounded by the City is subject to a

possessory lien in favor of the City in the amount required to obtain release of the vehicle.  Third,

the City's lien impairs the debtor's exemption of the full value of the car.

The parties dispute the fourth requirement – whether the City's lien is a judicial lien.  The

debtor contends that it is a judicial lien because the City must follow an administrative

adjudicatory process before it can impound a car and create a lien.  The City contends that the

lien is statutory because it is created automatically once the City impounds a car.

2

III.   Judicial Liens vs. Statutory Liens

The outcome here depends on whether the City's lien is a judicial lien or a statutory lien.

The Bankruptcy Code define both terms.  Section 101(36) states that a "judicial lien" is a "lien

obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  11

U.S.C. §101(36).  Section 101(53) states that a "statutory lien" is a "lien arising solely by force of

a statute on specified circumstances or conditions, or lien of distress for rent, whether or not

statutory, but does not include security interest or judicial lien, whether or not such interest or

lien is provided by or is dependent on a statute and whether or not such interest or lien is made

fully effective by statute."  11 U.S.C. §101(53).  Judicial liens and statutory liens are mutually

exclusive.  11 U.S.C. § 101(53); *In re Leaks (Ark. Dept. of Workforce Serv. v. Leaks)*, No. 16-

00267, 2017 WL 2577546 (E.D. Ark. June 14, 2017).

The key difference is that a statutory lien must arise "solely" by virtue of the statutory

provision creating it whereas a judicial lien arises after some kind of process – judicial, quasi-

judicial, or administrative.  As the Third Circuit has explained, "for a lien to be judicial, there

must be some judicial or administrative process or proceeding that ultimately results in the

obtaining of the lien."  *In re Schick*, 418 F.3d 321, 328 (3rd Cir. 2005).  The *Schick* court defined

a "statutory lien" as "only one that arises automatically and is not based on an agreement to give

a lien or on judicial action."  *Id.* at 323 (citations omitted).

As various courts have noted, the legislative history gives examples of statutory liens:

> A statutory lien is only one that arises automatically, and is not based on an
> agreement to give a lien or judicial action.  Mechanics', materialmen's, and
> warehousemen's liens are examples.  Tax liens are also included in the definition
> of statutory lien.

3

H.R.Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6271; *Schick,* 418 F.3d at 324;

*Rosol*, 114 B.R. at 565.

A prime example of a statutory lien is a mechanic's lien. The lien attaches by statute to

improved property from the date that payment for labor and materials to make the improvement

is due. No judicial, administrative, or other process must be followed before the claimant obtains

the lien. *See, e.g.*, 770 ILCS 60/1 (West 2019); *In re Beck*, No. 15–29541, 2016 WL 489892

(Bankr. E.D. Wis. Feb. 5, 2016) ("The provisions of [Wisconsin mechanic's lien and

construction lien statutes] create a lien by their very texts. The statutes create the liens

automatically, without any judicial, legal or other process. This is the essence of statutory lien."),

*vacated as moot sub nom*. *Wisconsin v. Boyd*, No. 16-202, slip op. at 5 (E.D. Wis. filed Feb. 21,

2017).

Judicial liens, by contrast, require some type of process before the lien arises. When the

statute that creates the lien provides an adjudicatory process for determining the claimant's

rights, the lien that arises is judicial, not statutory. In *Leaks*, for example, the court held that a

lien is judicial when an administrative process must be followed before it can be asserted. The

State of Arkansas determined that it had overpaid unemployment benefits based on fraud. It

issued a notice of the determination, and when the time for contesting or appealing the

determination expired, it recorded a certificate that created a lien under a state statute. The state

argued that the lien was statutory because it arose solely because of the recording of its

certificate.

The court rejected this argument, explaining that the lien was judicial because the quasi-

judicial process required before the certificate could be recorded was "a necessary component of

a lien's creation." *Leaks,* 2017 WL 2577546 at *3. The court refused to "disconnect" the lien's
creation by the filing of a certificate from the process that preceded the filing. *Id.* The court
concluded that the state's lien was judicial and could be avoided under § 522(f).

The district court in *Boyd* reached the same conclusion under a similar Wisconsin statute.
The district court rejected the state's argument that it held a statutory lien because the lien was
created solely by the recording of a "warrant" when the statute required an administrative process
before the warrant could be recorded. *Boyd*, slip op. at 8 ("I disagree that DWD's liens can be so
easily separated from the underlying process through which they are obtained.") .

The same is true here. The City's lien arises from Chicago Municipal Code provisions
that create an administrative process that must be followed before the City can seize the car and
create a lien. As the Seventh Circuit held in *In re Fulton*, 926 F.3d 916, 931 (7th Cir. 2019), for
each ticket issued, the City must follow an administrative process by which that ticket becomes a
"judgment" that can then be collected by seizing the car and asserting a lien. *Fulton* determined
that the police power exception to the automatic stay did not apply because "[p]rior to
impounding a vehicle, the City must administratively adjudicate the debtor's violations . . . and
those adjudications result in a determination of final liability – i.e., a judgment. Only after a
debtor has two or three judgments against it does the Municipal Code authorize the City to
impound the vehicle until the debtor pays the judgments and related costs and fees." *Id*. (citing
M.C.C. §§ 2-14-132(c)(1)(A), 9-92-080, 9-100-120(b)). Although *Fulton* was interpreting an
exception to the automatic stay and not the definition of "judicial lien," the court recognized that
the City ordinances mandate an administrative process that culminates in a judgment before the
City can seize a car and thereby assert a lien. The administrative process and resulting judgment

5

make the City's lien judicial – one obtained by "'judgment, . . . or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The City's lien can therefore be avoided under § 522(f).

The City argues that its lien is statutory because it is created under the Municipal Code by the simple act of impounding the vehicle. In its view, the administrative process required before it can impound the vehicle is irrelevant. The City ignores the *Fulton* decision interpreting the precise ordinances at issue here and holding that the City must obtain several "judgments" after administrative adjudications before it may impound a car.

The City relies instead on the Third Circuit *Schick* decision addressing a lien created by a New Jersey statute that bears no resemblance to the City's ordinances. In *Schick*, a debtor sought to use § 522(f) to avoid the lien of the New Jersey Motor Vehicles Commission on her real property. A New Jersey statute provided that the Commission could obtain a lien on a debtor's real property by issuing a "certificate of debt" for unpaid motor vehicle surcharges and directing the clerk of the state court to record it. The surcharges could be levied against a driver who was assessed too many violation points or was convicted of drunk driving or refusing to take a breathalyzer test. *Schick*, 418 F.3d at 324. The statute provided that the lien was created when the clerk of court docketed the certificate of debt. *Id.* The court determined that the underlying judicial process for charging the driver with a motor vehicle offense was too remote from the filing of the certificate to constitute the judicial process required for a judicial lien, observing that those proceedings had "no relation" to the creation of the lien. *Id.*

The decision is not particularly persuasive. It contains little explanation of why the adjudications required before surcharges can be assessed have "no relation" to the assertion of the lien. The analysis in *Leaks* and *Boyd* is more compelling. Both courts discussed *Schick* but

6

did not follow it.  They examined the statutory schemes for determining liability and asserting a

lien and concluded that the lien was judicial because it was the end result of the administrative

process.  *Leaks* at *3 ("The [state's] disconnecting of the quasi-judicial process from the filing of

the certificates is untenable - that process is a necessary component of the lien's creation.");

*Boyd*, slip op. at 8-9 ("The natural reading of this provision is that the warrant (and the resulting

lien) is the end result of the administrative and judicial process referenced.").  They recognized

that without the previous adjudications, no lien could be created so the lien was judicial.

But *Schick* is easily distinguished from this case in any event.  After concluding that the

adjudication of the underlying offenses had no relation to the creation of the lien, the court noted

that the amount of the surcharges were not determined in the underlying proceedings; they were

dictated by statute or regulation.  *Schick*, 418 F.3d at 326.  Here, by contrast, the ordinances

create an inextricable link between the administrative processes and the creation of the lien, and

the amount of the lien is determined through those processes.

As explained in detail in *In re Peake*, 588 B.R. 811, 817-821 (Bankr. N.D. Ill. 2018) ,

*aff'd sub nom. In re Fulton,* 926 F.3d 916 (7th Cir. 2019), the City adopted a number of

ordinances to comply with an Illinois statute that permits a municipality to "provide by ordinance

for a system of administrative adjudication of vehicular standing and parking violations and

vehicle compliance . . . ."  625 ILCS § 5/11-208.3(a).  The City's ordinances create a multi-step

administrative process for adjudicating traffic violations.  First, there is an administrative process

for adjudicating each ticket issued by the City.  M.C.C. § 9-100-050(a).  A violation of a parking

or traffic ordinance results in notice to the owner of the vehicle of the violation.  The vehicle

owner can contest the violation either in person at a hearing or in writing.  M.C.C § 9-100-055,

070, 080; *Peake*, 588 B.R. at 818.  If the owner contests the ticket and loses, she may appeal

under the Administrative Review Law of Illinois.  M.C.C. § 9-100-090; *Peake* 588 B.R. at 818.

If the owner fails to contest the ticket, or contests the ticket but loses and fails to appeal, the City

obtains a final "determination of liability" on the ticket.  *Peake*, 588 B.R. at 818-19.  As *Fulton*

held, each final determination of liability is a judgment.

Then, if the vehicle owner accumulates a specified number of determinations of liability,

the City must follow another administrative process before it can immobilize or impound a

vehicle.  M.C.C. § 9-100-120(b).  The City must first issue a notice of impending vehicle

immobilization.  *Id*.  The owner then has 21 days from the date of the notice to request a hearing

and appear in person to submit evidence that would disprove her liability for the payment of the

tickets.  *Id*.  Only after this process is completed can the vehicle be immobilized and then

impounded to collect the amounts owed for the traffic offenses.[1]  Once a vehicle is immobilized

---

[1] Section 9-100-120(b) mandates the process the City must follow before it can
immobilize and then impound a vehicle.  Section 9-100-120(c) requires that upon
immobilization, the City must place a notice on the vehicle warning, among other things, that if
the owner does not comply with the conditions for obtaining release of the immobilizing device
within 24 hours, "the device shall be released and the vehicle towed and impounded." M.C.C. §
9-100-120(c).  Sections 9-100-120(e) then provides the process for administrative review after
immobilization, subsequent towing and, presumably, impoundment.  Section 9-100-120(f)
contains procedures the City must follow after impoundment.  Thus, the processes required in §
Section 9-100-120(b) apply to immobilization, towing, and impoundment of vehicles.

Section 9-100-120(j) then states that any vehicle immobilized the city "shall be subject to
a possessory lien. . . ."  This lien arises once a vehicle is immobilized before towing and
impoundment, so it would apply to all impounded vehicles as well.  The lien continues in effect
until the conditions for release of an impounded vehicle are met.

The City nonetheless added provisions to two other ordinances stating that a possessory
lien attaches upon impoundment of a vehicle.  M.C.C. §§ 9-92-080(f); 2-14-132(l).  Sections 9-
92-080 and 2-14-132 provide procedures that apply after impoundment of a vehicle.   All three of
these ordinances were amended over the years in piecemeal fashion, resulting in less than

or impounded, it is "subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." M.C.C. §§ 9-100-120(j); *Peake*, 588 B.R. at 819-20.

The provision creating the lien is the final subsection of the lengthy ordinance creating the procedures the City must follow before it can immobilize or impound a car based on an accumulation of ordinary traffic offenses.[2] Here, as in *Leaks* and *Boyd,* the administrative processes that must precede assertion of the City's lien are directly linked in the ordinance to the creation of the lien by immobilization or impoundment. And, unlike in *Schick*, the amount of the City's lien is determined by the adjudications of the underlying offenses. As *Fulton* recognized, the City may impound the vehicle "until the debtor pays the judgment and related costs and fees." 926 F.3d at 931. The amount of the lien is therefore determined by the judgment on each ticket. Thus, the City's lien can be asserted only after it has obtained several judgments through an administrative process and followed the notice and hearing process required before impoundment. The City's lien did not arise solely by operation of the ordinance but only after completion of the mandatory administrative processes required by the ordinances. The lien is judicial, not statutory.

---

consistent wording and duplicative provisions. It is clear, however, that the City must follow the processes mandated in § 9-100-120(b) before it can impound a vehicle.

[2]The City may tow a vehicle without following this process in limited exigent circumstances, including when the vehicle is disabled and obstructing traffic, an unattended vehicle is constituting a hazard to the normal movement of traffic, or a vehicle has been abandoned. M.C.C. § 9-92-030. This provision does not apply here. The debtor's vehicle was impounded based on her accumulation of ordinary tickets. She was entitled to the process required under § 9-100-120(b).

9

III.    <u>Conclusion</u>

The City's lien is a judicial lien that can be avoided under § 522(f).  The debtor has

established all the elements necessary to avoid the lien.  Her motion will be granted.


Dated: October 29, 2019

ENTERED:

Carol A. Doyle
United States Bankruptcy Judge